UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELLE PAULETTE VASQUEZ,<br><br>Petitioner,<br><br>v.<br><br>NANCY A. BERRYHILL, Commissioner of Social Security,<br><br>Respondent. | No. 1:17-cv-00813-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF NANCY BERRYHILL, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF GABRIELLE PAULETTE VASQUEZ** |

**I.  Introduction**

Plaintiff Gabrielle Paulette Vasquez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplementary Security Income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 13, 14, and 15. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence. Therefore, Plaintiff's appeal is denied.

**II.  Procedural Background**

Plaintiff had previously applied for disability benefits on multiple occasions. AR 87. Her application for childhood disability was denied at the hearing level on February 12, 2007, and

---
[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 8.

1

another SSI application was denied initially on July 16, 2010, and upon reconsideration, on December 8, 2010. The agency denied an SSI application on November 9, 2011, and denied Plaintiff's motion for reconsideration on February 8, 2012, for insufficient good cause to overcome its untimely filing. AR 87. The record also notes other prior filing decisions that the agency was unable to locate in its archives. AR 87.

On April 10, 2013, Plaintiff filed the application for supplemental security income that is the subject of this appeal. AR 12. She alleged disability beginning May 14, 2012. AR 12.

The Commissioner denied the application initially on May 29, 2013, and upon reconsideration on January10, 2014. AR 12. On March 6, 2014, Plaintiff filed a timely request for a hearing before an Administrative Law Judge. AR 12.

Administrative Law Judge Vincent Misenti presided over an administrative hearing on August 18, 2015. AR 12. Plaintiff, represented by counsel, appeared and testified. AR 12. An impartial vocational expert, Judith Nazarian (the "VE") also appeared and testified. AR 12.

On November 23, 2015, the ALJ denied Plaintiff's application. AR 12-22. The Appeals Council denied review on April 12, 2017. AR 1-4. On June 16, 2017, Plaintiff filed a timely complaint seeking this Court's review. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony

Plaintiff (born January 10, 1989) is approximately five feet, six inches tall and weighs approximately 300 pounds. AR 43. She lives with her sister and her sister's three children. AR 45-46. Plaintiff completed eleven years of schooling and attended special education classes. AR 46. She reads poorly and needed help to complete her disability forms. AR 47. Plaintiff does not drive. AR 46. Plaintiff has worked for money only once and left the job after her first half-day as a result of panic attacks. AR 48.

Plaintiff testified that she had major depression, ADHD, and bipolar disorder. AR 48. She preferred to stay in her room with her dog. AR 48, 49. Plaintiff experienced "mood swings, from being happy, to sad, to angry, to not wanting to be around people because I'm so paranoid

that they're all out to get me." AR 48. Three or four days a week, she did not get out of bed. AR 57.

Plaintiff experienced daily panic attacks that lasted about two hours and, at their most severe, caused her to pass out. AR 49; 50. She took Klonopin, which sometimes helped her relax. AR 50. Plaintiff testified that her antidepressant medication was not effective and that her bipolar medications were only partially effective. AR 55. Plaintiff admitted that she often did not take her medication because she always believed that she was all right, even when she was not. AR 51. Plaintiff received talk therapy from a nurse practitioner every two months. AR 51.

Plaintiff testified that she had no friends with whom to socialize. AR 53. She got along fine with her sister's children but preferred to isolate herself in her room. AR 53.

Plaintiff had difficulty following instructions and problems with memory. AR 53. She could focus on something for five to ten minutes. AR 56. When she lost focus she would forget what she had been focused on and needed to lie down and relax for ten to fifteen minutes. AR 56-57. Plaintiff estimated that she spent five or six hours each day lying down. AR 57.

Plaintiff did not do household chores because she preferred to stay in her room. AR 54. Her sister and the children cared for Plaintiff's dog. AR 58. She came out for meals but returned to her room after an hour and a half. AR 54.

As her testimony ended, Plaintiff announced, "I am trying not to have a panic attack." AR 58.

### B. Adult Function Report

According to Plaintiff, she does "not comprehend the basic concept of time, alarms do not wake me up. I lack the basic communication skills to accomplish my tasks." AR 293. Her days are spent eating, hanging out in her room, bugging her family, and being bored. AR 294. If she is bored, she reads. AR 294, 297. Her sister helps her with personal care and household chores. She is able to cook, do laundry, and clean the house, although she works slowly if she is distracted. AR 295. Plaintiff leaves the house a few times weekly, driven to her destination by others. AR 296. If she goes out alone, she gets lost and experiences a panic attack. AR 296.

Plaintiff has no social activities except spending a week each month with her mother. AR 297. She no longer has friends because they make her angry. AR 297-98. Plaintiff has no problems with authority figures unless they anger her. AR 299.

Plaintiff can count change but does not know how to pay bills, use a checkbook, or handle a savings account. AR 296. She has difficulty following written instructions and an inability to remember oral instructions. AR 298.

### C. Third Party Function Report

Plaintiff lives primarily with her sister, Rebecca Dale St. John. AR 283. In a report dated May 9, 2013, Ms. St. John reported that Plaintiff has a hard time remembering her daily tasks and requires constant reminders. AR 279. Plaintiff also needs reminders for medications and personal care. AR 280, 281. Because Plaintiff has difficulty sleeping, Ms. St. John allows her to sleep late each morning. AR 280. Plaintiff lacks the concentration to clean up after herself within a reasonable amount of time and is easily distracted. AR 280. Ms. St. John does not let Plaintiff go out unsupervised because she gets lost easily. AR 282. In Ms. St. John's opinion, Plaintiff would not be able to drive safely. AR 282.

Plaintiff has a bad temper and poor social skills. AR 279, 284. When Plaintiff becomes angry, Ms. St. John has to separate her from others until she calms down. AR 284. Plaintiff is easily angered by those in authority. AR 285.

Plaintiff usually stays in her room and plays with her dog, but she also goes swimming and rides her bicycle. AR 280. Plaintiff enjoys reading. AR 283. Although Plaintiff feeds her dog and cares for it emotionally, she requires reminders to change the dog's water and to clean up after the dog. AR 280. Plaintiff is able to cook simple foods but does not prepare full meals. AR 281. She is able to do laundry and clean the house, but requires simple, step-by-step instructions and extra time to complete the task. AR 281. Plaintiff cannot follow written instructions. AR 284. Plaintiff can count change but lacks other money management skills. AR 282.

///

///

### D. Special Education

Plaintiff had poor grades and numerous absences in elementary school, and was twice suspended for fighting. AR 207, 215. Following a psychological evaluation, Plaintiff began receiving special education services in April 2001 for a specific learning disability (oral expression). AR 206, 211, 214.

The 2001 psychological evaluation revealed that all of Plaintiff's scores on the Wechsler Intelligence Scale for Children (WISC-III) were in the borderline range, with a full-scale IQ of 73. AR 216. AR 216-17. Plaintiff scored in the average range on the Kauffman Assessment Battery for Children (K_ABC), which is intended to provide a measure of ability for children who are "linguistically different." AR 217. Plaintiff was re-tested in 2003 with substantially similar results.

### E. Medical Treatment

From November 19, 2011, to the hearing date, Plaintiff received all of her care, which consisted of case management and psychiatrist-supervised medication, from Fresno County Behavioral Health ("FCBH"). Nothing in the record documents that Plaintiff received talk therapy or other counseling through FCBH. Plaintiff's diagnosis remained the same throughout the relevant time period:

| | | |
|---|---|---|
| Axis I | 296.33 | Major Depressive Disorder, Recurrent, Severe Without Psychotic Features |
| | 314.00 | Attention-Deficit/Hyperactivity Disorder, Predominantly Inattentive Type |
| | 296.52 | Bipolar I Disorder, Most Recent Episode Depressed, Moderate |
| Axis II: | | No Diagnosis (Not Medi-Cal Covered) |
| Axis III: | | |
| Axis IV: | | Social Environment, Occupational, Economic, Health Care Services |
| Axis V: | | 55 (Highest Axis V in last 12 months: 60) |

Archimedes Garcia, M.D., began treating Plaintiff before the period relevant to this application and supervised her medications until April 30, 2013. *See* AR 465-78; 507-510; 543-44. He generally saw Plaintiff every three months. The doctor's notes consistently report that Plaintiff had trouble sleeping and frequently observed that she was irritable and shook her legs continuously while seated during her appointment. Plaintiff frequently complained of an inability to concentrate, increased irritability, or a need to isolate herself. On two occasions, the doctor noted that Plaintiff was cooperative and pleasant to talk to. AR 475, 543.

On November 17, 2011, Dr. Garcia noted that Plaintiff was still experiencing bouts of depressive symptoms with underlying anxiety. AR 477. On June 14, 2012, Plaintiff's friend Gina accompanied her to the appointment and reported that Plaintiff had mood changes, was irritable, and had a "short fuse." AR 473. On September 13, 2012, Plaintiff was accompanied to the appointment by her father, who reported that Plaintiff was not compliant with her medications. AR 471-72. Plaintiff frequently went to FCBH without an appointment because she had run out of medications. *See, e.g.,* AR 465, 507.

Accompanied by Ms. St. John, Plaintiff saw psychiatrist Ramon Raypon, M.D., on August 22, 2013. AR 502-06. Plaintiff reported mood swings, excitability, depression, panic attacks, angry outbursts, trouble sleeping, and an inability to trust others. AR 505. "My mind keeps wandering," said Plaintiff, "constant racing thoughts like I'm on crack." AR 505.

On October 24, 2013, Plaintiff complained to Dr. Garcia about increased irritability and "really bad" insomnia. AR 543. Dr. Garcia noted that prescribing Abilify had not helped Plaintiff sleep. AR 543. Plaintiff was experiencing mood swings, cycling between anger and irritation, and depression. AR 543. She was frustrated by those with whom she lived and wanted to hurt those who told her to do something or talked about her, although she had no plans to act

6

on her thoughts. AR 543. Dr. Garcia prescribed Depakote ER, Klonopin, Seroquel XR, Zoloft, and methylphenidate. AR 463.

Having requested a psychiatrist other than Dr. Garcia, Plaintiff saw psychiatrist Patricia Santy, M.D., on December 16, 2013, and March 4, 2014. AR 538-42. In December, Dr. Santy observed that Plaintiff looked and behaved much younger than 24 years old. AR 541. Plaintiff was not taking her medications as prescribed. AR 541. She was sleeping during the day and not at night. AR 541. Plaintiff asked to discontinue methylphenidate (Ritalin), which she thought was making her irritable, paranoid, and afraid. AR 541. Plaintiff's mother, who had accompanied her to the appointment, reported that Plaintiff's irritability had increased. AR 541. Throughout the appointment, Plaintiff contradicted her mother "quite a bit." AR 541.

In March, Dr. Santy noted that Plaintiff did not like being around people and was resistant to change in her life. AR 538. Prescription options were limited since Plaintiff was no longer covered by Medi-Cal. AR 538.

When Plaintiff saw psychiatrist Adam Quest, M.D., on September 2, 2014, she had been off her medications for two months but had not experienced any acute decompensation. AR 536. Dr. Quest noted Plaintiff's history of easy irritability and anger, speaking without thinking, and mood disregulation. AR 536. She reported difficulty sleeping and demonstrated some paranoia, fearfulness, and social isolation. AR 536. The doctor questioned the propriety of Plaintiff's diagnosis of bipolar disorder since her records included no evidence of mania. AR 536.

When Plaintiff next saw Dr. Quest on September 30, 2014, he noted that the mirtazepine prescription had not helped Plaintiff's insomnia and that she was awakening frightened during the night and recalling dreams during the day. AR 534. After Dr. Quest and Plaintiff reviewed her journal, he noted her anger and instability in relationships. AR 534.

7

Plaintiff had again been off her medications for two months without decompensation when she saw Dr. Quest on December 9, 2014. AR 532. Her anxiety had increased. AR 532. Plaintiff's medications were fluoxetine, diphenhydramine HCl, and prazosin.

### F. Nurse's Opinion

On July 6, 2015, Cecilia Salazar, N.P., completed a "Mental Disorder Questionnaire for Evaluation of Ability to Work." AR 547-48. Nurse Salazar had seen Plaintiff once previously on July 1, 2015. AR 548. In Salazar's opinion, Plaintiff had severe impairments of memory and concentration. AR 547. Her ability to work would be further impaired by significant impairments of delusional or paranoid thoughts, mood swings, and social isolation. AR 547. Plaintiff's mental illness would impair her ability to work with supervisors, co-workers, and the public, and impair her ability to adapt to the stresses of a normal work environment. AR 548.

### IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v.*

///

*Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V. **The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment of impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927; 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had

9

medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. §§ 416.920(a)-(f).

In addition, when an applicant has one or more previous denials of applications for disability benefits, as Plaintiff does in this case, he or she must overcome a presumption of nondisability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen,* 844 F.2d 664, 666 (9th Cir. 1988).

Social Security Acquiescence Ruling ("SSR") 97–4(9), adopting *Chavez,* applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjudicated period. *Lester v. Chater,* 81 F.3d 821, 827 (9th Cir. 1995). The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's RFC, age, education, or work experience. *Id.* at 827–28; *Chavez,* 844 F.2d at 693.

**VI.    Summary of the ALJ's Decision**

As previously noted, Plaintiff had failed to timely request reconsideration of her last previous application. The ALJ declined to reopen Plaintiff's the last prior application in the absence of a showing of good cause for her failure to request reconsideration on a timely basis. AR 12. He considered evidence beginning on November 10, 2011, and treated evidence in the record from before that date as longitudinal information. AR 12.

The ALJ found that the circumstances had changed since Plaintiff's prior application in that Plaintiff had "presented new and material evidence warranting a change in her residual

///

functional capacity." AR 13. Accordingly, he concluded that the presumption of continuing disability created by Acquiescence Ruling 97-4(9) did not apply. AR 13.

Then, using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 13-22. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of April 10, 2013. AR 15. Plaintiff's severe impairments included affective disorder and attention deficit-hyperactivity disorder. AR 15. The severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d); 416.925; and 416.926). AR 15-16. The ALJ concluded that Plaintiff had the residual functional capacity to perform the full range of work at all exertional levels but that she was limited to simple and repetitive tasks with occasional contact with coworkers and the public. AR 16-21.

Plaintiff had no past relevant work. AR 21. Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform other jobs available in the national economy, such as hand bander, DOT No. 920.687-026, SVP 1, light/unskilled with 335,537 positions nationally;, or industrial cleaner, DOT No. 381.687-018, SVP 2, medium with 1,170,481 positions nationally. AR 22. Accordingly, the ALJ found that Plaintiff was not disabled. AR 22.

**VII.    The ALJ's Evaluation of Medical Evidence**

Plaintiff challenges the Commissioner's decision, contending that the ALJ failed to fully consider the conflicting medical opinions and to give specific and legitimate reasons for rejecting one opinion and crediting another. Doc. 13 at 17-18. The Commissioner disagrees, contending that the ALJ properly relied on the opinions of state agency physicians Murillo and Ikawa, and properly rejected the opinions of Nurse Salazar. Doc. 14 at 7-11. The Court finds that the ALJ properly relied on the record as a whole.

**A.    The ALJ's Analysis**

In formulating Plaintiff's residual functional capacity, the ALJ gave the greatest weight to Plaintiff's psychiatric treatment notes for the period from May 2011 to December 2014, which he contrasted with evidence of Plaintiff's daily activities that revealed that she took walks, rode her

bicycle, and was accompanied to a psychiatric appointment by her friend Gina. *See* AR 18-19. He summarized, "Such mild findings upon various mental status examinations are not consistent with an individual who has a disabling mental illness." AR 19.

In contrast, the ALJ gave little weight to Nurse Salazar's responses to a mental health questionnaire completed July 6, 2015, based on (1) Salazar's status as a non-acceptable medical source, (2) the absence of accompaniment of any medical records, and (3) the inconsistency of Salazar's opinions with the mental health treatment notes from May 2011 through December 2014. AR 20. Similarly, the ALJ only gave "some weight" to Ms. St. John's third party function report and subsequent letter concerning Plaintiff's limitations due to their inconsistencies with the objective medical evidence and medical opinions of record. AR 20. The ALJ wrote:

> After careful consideration of the evidence, the undersigned found that the claimant's medically determinable impairments could reasonably been expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the above residual functional capacity assessment. In reaching this conclusion, the undersigned considered the absence of clinical signs and laboratory findings in the case record that would substantiate the claimant's subjective complaints; the claimant's receipt of only routine and conservative treatment without reasonable or credible explanation despite complaints of disabling symptoms; the claimant's lack of attempts to obtain relief from the symptoms; the claimant's failure to try even prescribed treatment modalities for relief; the lack of consistency of the claimant's subjective complaints throughout the medical record; the claimant's very limited work history and earnings record even prior to the alleged onset of disability; and the observations of administration personnel who noted that the claimant had no difficulty with sitting, standing, walking, understanding, coherency, concentration, talking, answering, and reading during a personal interview performed at the time her initial application for disability was processed. The undersigned also carefully observed the claimant at the hearing and found that she demonstrated sufficient ability to sit and concentrate to cast doubt upon the credibility of her allegations and testimony.

AR 20-21 (internal citations to record omitted).

///

///

///

12

At step three, the ALJ relied on Dr. Ikawa's opinion[2] that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in concentration, persistence, and pace, but no episodes of decompensation of extended duration. AR 15-16. The hearing decision does not refer to Dr. Murillo except to the extent that the doctor is included in the general statement, "[T]he above residual functional capacity assessment was supported by the medical record, medical opinion evidence of record including State agency opinion, and the overall evidence of record." AR 21.

### B. <u>Applicable Law</u>

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians, and Plaintiff's testimony when it

///

---

[2] Dr. Ikawa's opinion, dated January 9, 2014, is briefly set forth in the Disability Determination Explanation for the SSI application that is the subject of the appeal. *See* AR 103-04.

13

conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

Nurse practitioners are not evaluated as if they were physicians. A nurse practitioner is not considered an acceptable medical source under 20 C.F.R. § 416.913.[3] Instead, nurse practitioners are considered to be other sources. 20 C.F.R. § 416.913(d)(1) (listing medical sources that are considered other sources, including nurse practitioners, physicians assistants, naturopaths, chiropractors, audiologists, and therapists). Unlike the opinions of physicians, the opinions of nurse practitioners are not entitled to special weight. An ALJ may reject the opinions of other sources by giving "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Factors used to evaluate a nurse practitioner's opinion include: (1) examining relationship; (2) length of treatment relationship and frequency of examination; (3) supportability of opinion; (4) consistency with the record; (5) specialization; and (6) other factors supporting or contradicting the opinion. 20 C.F.R. § 416.927 (c) and (f)(1).

### C. Nurse Salazar's Opinion

Plaintiff contends that the ALJ erred in giving little weight to Nurse Salazar's opinion based on (1) her status as an "other source," (2) the absence of any corresponding medical records, and (3) the inconsistency of her opinion with psychiatric treatment notes from October 2011 to December 2014. Doc. 13 at 19. The Commissioner and the Court do not agree.

First, relying on *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014), Plaintiff contends that the ALJ should have recognized that as an "other source," Salazar could "provide evidence about the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." Doc. 13 at 19. Her claim is misplaced. Although the ALJ recognized Salazar as a "non-acceptable medical source" rather than an "other source," he fully considered Salazar's opinion,

---

[3] The Social Security Administration has recently adopted new rules applicable to claims filed after March 27, 2017, which expand the category of acceptable medical providers to include, among others, nurse practitioners. 20 C.F.R. §§ 404.1502(a)(6), (7), (8); 416.902(a)(6), (7), (8) (2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The revisions do not apply to Plaintiff's claim, which was filed April 10, 2013.

14

crediting his step three finding that Plaintiff had moderate difficulties in social functioning to Salazar's opinion (AR 15), but giving the opinion little weight when determining Plaintiff's residual functional capacity at step four (AR 20).

In part, the ALJ's step four determination was premised on the absence of accompanying medical records to support Salazar's opinion. AR 20. Plaintiff asserts, "[T]he ALJ did not recognize that NP Salazar is a mental health professional at Fresno County Department of Behavioral Health and therefore her opinion is actually accompanied by medical records from all of Plaintiff's mental health providers." Doc. 13 at 19. Nothing in the record supports this assertion. Nurse Salazar's opinion was not provided as part of the psychiatric treatment records of Fresno County Mental Health, but was submitted by Plaintiff's attorney with no reference to Fresno County Behavioral Health. AR 546. In fact, the attorney's cover letter refers to Nurse Salazar as "Cecilia Salazar, M.D." AR 546. The Mental Disorder Questionnaire makes no reference to Fresno County Behavioral Services. AR 547-48. The questionnaire does refer to Plaintiff having a single prior appointment with Salazar but provides no treatment notes. AR 548. In short, there is no evidence from which the ALJ, or this Court, could find that Salazar was acting as an employee of Fresno County Behavioral Health.

Finally, Plaintiff contends that the ALJ erred in finding Salazar's opinion "inconsistent with the mental health treatment notes from May 2011 to December 2014 that showed generally normal mental status examinations." Doc. 13 at 19. In support of her contention, Plaintiff relies on her diagnoses and "numerous occurrences of pressured speech, agitated behaviors, anxiety, impaired insight and judgment, sleep difficulties, self-isolation, paranoia, and fearfulness" noted in the balance of the record. Doc. 13 at 19.

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The Court is not required to accept Plaintiff's characterization of her

15

treatment records. Even if this Court were to accept that the record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as well. When the evidence could arguable support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066. The ALJ did not err in finding that Nurse Salazar's opinion was inconsistent with the record as a whole.

### D. Dr. Kuberski's Opinion

On June 11, 2010, in the course of the SSI application denied July 16, 2010 (original), and December 8, 2010 (reconsideration), Leslie Kuberski, Psy.D., issued a comprehensive psychiatric evaluation as a consulting psychologist. AR 381-84. Dr. Kuberski opined that Plaintiff was not able to perform simple and repetitive tasks or detailed and complex tasks, could not accept instructions from supervisors, was unable to interact with coworkers and the public, could not perform work activities on a consistent basis without special or additional instructions, could not maintain regular attendance in the workplace, could not complete a normal workday or workweek without psychiatric interruptions, and could not deal with the usual stress associated with the workplace. AR 384. Plaintiff contends that the ALJ erred in failing to consider Kuberski's opinion.

Addressed directly, Plaintiff's argument is unpersuasive. Kuberski's opinion was offered in the course of a prior application for supplemental security income in which Plaintiff did not prevail and on a date prior to the November 10, 2011, cut-off date from which the ALJ determined to consider evidence in the above-captioned case. AR 12-13. The ALJ determined that all earlier evidence was to be considered for longitudinal purposes only. AR 13. Plaintiff did not object to the ALJ's determination at the agency hearing or in her appeal to this Court.

Plaintiff also presents a further , but unpersuasive analysis, contending that by considering the May 24, 2013, opinion of non-examining agency consultant E. Murillo, M.D., who gave great weight to the October 8, 2011, opinion of another consultative examiner, Ekram Michiel, M.D., the ALJ was required also to consider Kuberski's opinion. *See* Doc. 13 at 10, 17-19. This argument has little merit.

When "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). The ALJ did not discuss every piece of evidence in the administrative record and particularly did not discuss every piece of evidence submitted in Plaintiff's prior SSI applications. However, the ALJ considered the entire record, and his findings and conclusions are supported by substantial evidence in the record. Omitting a discussion of Dr. Kuberski's opinion in the hearing decision was not error.

**VIII. Conclusion and Order**

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff, Gabrielle Paulette Vasquez.

IT IS SO ORDERED.

Dated: __August 30, 2018__         _____/s/ Gary S. Austin_____
                                          UNITED STATES MAGISTRATE JUDGE

17